# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KALEY DIANN SILVA and LINDSEY AVENETTI,** | CIVIL ACTION NO. 1:18-CV-2135 |
| **Plaintiffs** | (Chief Judge Conner) |
| v. | |
| **RITE AID CORPORATION,** | |
| **Defendant** | |

## MEMORANDUM

Plaintiffs Kaley Diann Silva ("Silva") and Lindsey Avenetti ("Avenetti") commenced this action against defendant Rite Aid Corporation ("Rite Aid"). Plaintiffs allege several Pennsylvania common-law and statutory claims against Rite Aid, claiming that certain Rite Aid product labeling was misleading. (Doc. 38). Rite Aid moves to dismiss plaintiffs' second amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 50).

## I. Factual Background and Procedural History

Rite Aid is a nationwide drug store chain and a retailer of nutritional supplements. (Doc. 38 ¶¶ 8, 10). Rite Aid sells its own nutritional supplements in brick-and-mortar stores and online through its website. (See id. ¶¶ 3, 10). These nutritional supplements are packaged using two product labels. The principal display panel label is located on the front of the bottle and contains basic information about the product, including the name of the nutritional supplement, the delivery mechanism (*e.g.*, capsule, tablet), and the quantity of pills. (See id. ¶¶ 35-37, 47-48; see, e.g., id. at 22, Figure 5a). The supplement facts label, located

on the back of the bottle, provides a more detailed description of the product's ingredients and serving size. (See, e.g., id. at 22, Figure 5a). In Rite Aid's stores, these bottles are placed next to and above a pricing label. (Id. ¶ 49). The pricing label conveys the price, the nature of the supplement, and the number of pills per bottle. (Id. ¶ 49; see, e.g., id. at 23, Figure 5c). On Rite Aid's website, consumers can view the principal display panel and supplement facts labels before purchasing by clicking on small image icons. (See id. ¶ 71; see, e.g., id. at 24, Figure 5b).

Plaintiffs are Oregon residents and consumers of Rite Aid supplements. (Id. ¶¶ 6-7). Silva purchased two bottles of nutritional supplements at a Rite Aid store in Oregon. (Id. ¶ 93). Silva does not allege that she read the supplement facts labels before purchasing the bottles. (See id. ¶¶ 99, 104). Avenetti purchased two bottles of nutritional supplements through Rite Aid's online store. (Id. ¶¶ 108-09). Avenetti similarly does not claim to have read the supplement facts labels by clicking on its image before completing the online transactions. (See id. ¶¶ 113, 114). Plaintiffs allege that the principal display panel labels for the purchased products failed to accurately specify the quantity of supplement per serving and the size of each serving. (Id. ¶¶ 51-54).

Plaintiffs commenced this action by filing a complaint on February 2, 2018. Plaintiffs are now proceeding on their second amended complaint, alleging claims for intentional and negligent misrepresentation, breach of contract, breach of express and implied warranties, unjust enrichment, and violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 PA. STAT. AND CONS. STAT. ANN. § 201-1 *et seq*. Rite Aid moves to dismiss the second

amended complaint for lack of subject matter jurisdiction and failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The motion is fully briefed and ripe for disposition.

## II. Legal Standards

### A. Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss a claim for lack of subject matter jurisdiction. See FED. R. CIV. P. 12(b)(1). Such jurisdictional challenges take one of two forms: (1) parties may levy a "factual" attack, arguing that one or more of the pleading's factual allegations are untrue, removing the action from the court's jurisdictional reach; or (2) they may assert a "facial" challenge, which assumes the veracity of the complaint's allegations but nonetheless argues that a claim is not within the court's jurisdiction. Lincoln Benefit Life Co. v. AEI Life, LLC, 800 F.3d 99, 105 (3d Cir. 2015) (quoting CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008)). In either instance, it is the plaintiff's burden to establish jurisdiction. See Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).

### B. Failure to State a Claim

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County

3

of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  The court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

To test the sufficiency of the complaint, the court conducts a three-step inquiry.  See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010).  First, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"  Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded.  Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Then, once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556).  A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

### III.  **Discussion**

Reduced to its *essentia*, plaintiffs' position is that Rite Aid's principal display panel labels are misleading.  Plaintiffs claim that a reasonable consumer would understand the principal display panel labels alone as promising a full serving of nutritional supplement in each capsule or tablet.  Rite Aid contends that plaintiffs

4

lack standing to seek injunctive relief and that plaintiffs have failed to state any claim for which relief can be granted. We begin with the question of standing.

**A.     Standing**

Article III of the United States Constitution limits federal court jurisdiction to "cases" and "controversies." U.S. CONST. art. III, § 2. To establish Article III standing, a plaintiff must demonstrate "(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likel[ihood] that the injury will be redressed by a favorable decision." Susan B. Anthony List v. Driehaus, 573 U.S. 149, 157-58 (2014) (internal quotation marks omitted) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)). A plaintiff successfully pleads an injury in fact by alleging "that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, Inc. v. Robins, 578 U.S. __, 136 S. Ct. 1540, 1548 (2016), as revised (May 24, 2016) (quoting Lujan, 504 U.S. at 560-61); see also Cottrell v. Alcon Labs., 874 F.3d 154, 162 (3d Cir. 2017) (citation omitted).

A plaintiff seeking injunctive relief bears the burden of establishing that they are "'likely to suffer future injury' from the defendant's conduct." *In re* Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Liab. Litig., 903 F.3d 278, 292 (3d Cir. 2018) (quoting McNair v. Synapse Grp., Inc., 672 F.3d 213, 223 (3d Cir. 2012)). In class actions, at least one named plaintiff must satisfy this future injury requirement. McNair, 672 F.3d at 223 (citations omitted).

Plaintiffs' second amended complaint is devoid of any allegation of future injury. (See Doc. 38). Recognizing this deficiency, plaintiffs seek leave to amend

5

"to plead additional facts that will support their standing to seek injunctive relief, including but not limited to facts showing that Plaintiffs still plan to purchase Rite Aid products in the future." (Doc. 59 at 28, 32). But intent to purchase Rite Aid nutritional supplements in the future does not alone establish an actual or imminent future injury. And any suggestion that plaintiffs *may* be harmed by a future purchase of Rite Aid nutritional supplements is far too speculative to justify injunctive relief. See McNair, 672 F.3d at 224-25.

The law instead presumes that individuals "act rationally[] in light of the information they possess." Id. at 225. When an individual suffers an injury and subsequently becomes aware of the cause of that injury, the law affords that individual the dignity of assuming that they will not act in a manner which results again in the same injury. See *In re* Johnson & Johnson, 903 F.3d at 292-93; McNair, 672 F.3d at 225 & n.13. To suffer the same injury from a future purchase, plaintiffs would have to ignore their knowledge and experience regarding Rite Aid's labeling practices. See McNair, 672 F.3d at 225 n.15. "In short, [plaintiffs] ask us to presume they will be fooled again and again…." Id. We decline to do so and accordingly dismiss their request for injunctive relief.

### B. Uniform Commercial Code Claims

Contracts concerning the sale of goods are governed by Pennsylvania's Uniform Commercial Code, 13 PA. CONS. STAT. § 1101 *et seq.* Feingold v. Win-Vent, Inc., 562 A.2d 830, 831 (Pa. Super. Ct. 1989) (citing 13 PA. CONS. STAT. § 2102). A buyer who accepts goods under a contract must notify the seller of an alleged breach "within a reasonable time after he [or she] discovers or should have

discovered [said] breach." 13 PA. CONS. STAT. § 2607(c)(1). Failure to notify the seller bars the buyer from obtaining "any remedy" under the Uniform Commercial Code. 13 PA. CONS. STAT. § 2607(c)(1). Pre-suit notification is a condition precedent to recovery, and the buyer has the burden of pleading compliance with Section 2607. See Vanalt Elec. Constr. Inc. v. Selco Mfg. Corp., 233 F. App'x 105, 111 (3d Cir. 2007) (nonprecedential); Incubadora Mexicana, SA de CV v. Zoetis, Inc., 310 F.R.D. 166, 173-74 (E.D. Pa. 2015). In class actions, this pre-suit notice requirement applies to the class as well as the named plaintiffs. See Samuel-Bassett v. Kia Motors Am., Inc., 34 A.3d 1, 35 (Pa. 2011).

Plaintiffs assert claims for breach of contract and implied and express warranties. The second amended complaint is silent as to whether plaintiffs provided notice to Rite Aid of the alleged breach before commencing this litigation. (See Doc. 38). Plaintiffs are therefore barred from obtaining "any remedy" for these alleged breaches. See 13 PA. CONS. STAT. § 2607(c)(1). This deficiency warrants dismissal of plaintiffs' claims for breach of contract, implied warranty, and express warranty. We will grant plaintiffs leave to amend these claims to assert any facts in their possession pertinent to this pleading requirement.

Plaintiffs' breach-of-contract claim will also be dismissed for failure to state a claim. A breach of contract claim in Pennsylvania has three elements: "(1) the existence of a contract that includes its essential terms; (2) a breach of that contract; and (3) damages resulting from the breach." Hershey Creamery Co. v. Liberty Mut. Fire Ins. Co., 386 F. Supp. 3d 447, 454–55 (M.D. Pa. 2019) (Conner, C.J.) (citing Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone

7

Middleman, P.C., 137 A.3d 1247, 1258 (Pa. 2016)). A sale of goods constitutes a contract under Pennsylvania law. See 13 PA. CONS. STAT. § 2106(a). The parties dispute whether product labels can give rise to contractual obligations sufficient to support a breach-of-contract claim. (See Doc. 53 at 8-9; Doc. 59 at 18-19). We need not resolve this issue. Assuming *arguendo* that product labels can create contractual obligations, plaintiffs fail to state a plausible breach of those obligations.

In Pennsylvania, the alleged contract "should be read as a whole … to give effect to its true purpose" and "must be interpreted to give effect to all of its provisions." Commonwealth *ex rel* Kane v. UPMC, 129 A.3d 441, 463-64 (Pa. 2015) (citations omitted). The bottles at issue here have front and back labels that together constituted the terms of any contract that might have been formed. (See, e.g., Doc. 38 at 22, Figure 5a). Plaintiffs do not allege that Rite Aid breached the totality of the contract or its "true purpose." Rather, they only claim that the principal display panel label and price label were misleading when read in isolation. (Id. ¶¶ 56, 60, 63, 65, 69, 72). Plaintiffs have not stated a plausible basis for Rite Aid's purported breach, nor have they cited any authority to support the conclusion that the four corners of the alleged contract begin and end with the principal display panel label. We will therefore dismiss plaintiffs' breach of contract claim without prejudice and we will grant leave to amend.

## C. Economic Loss Doctrine

Rite Aid also moves to dismiss plaintiffs' UTPCPL and common-law tort claims via the economic loss doctrine. (See Doc. 53 at 4-8). The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their

8

entitlement flows only from a contract." Werwinski v. Ford Motor Co., 286 F.3d 661, 671 (3d Cir. 2002) (quoting Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 618 (3d Cir. 1995)). But it does not apply where "the plaintiff can establish the defendant's breach of a legal duty arising under common law that is independent of any duty assumed pursuant to contract." Duhring Res. Co. v. United States, No. 18-1289, __ F. App'x __, 2019 WL 2359392, at *4 (3d Cir. June 4, 2019) (nonprecedential) (quoting Dittman v. Univ. of Pittsburgh Med. Ctr., 196 A.3d 1036, 1038 (Pa. 2018)).

District courts in the Third Circuit are divided as to whether the economic loss doctrine bars UTPCPL claims. See McDonough v. State Farm Fire & Cas. Co., 365 F. Supp. 3d 552, 559-60 (E.D. Pa. 2019) (collecting cases). Rite Aid argues that we are bound by the Third Circuit's decision in Werwinski v. Ford Motor Co., 286 F.3d 661 (3d Cir. 2002), which "predicted that the Pennsylvania Supreme Court would hold that the economic loss doctrine applies to UTPCPL claims." (Doc. 53 at 5 (quoting Werwinski, 286 F.3d at 671); see also Doc. 65 at 2-5). Plaintiffs respond that we are not bound by Werwinski because Pennsylvania law has changed in the 17 years since that decision, with the Pennsylvania Superior Court twice holding that the economic loss doctrine does not bar UTPCPL claims. (Doc. 59 at 2-8). We agree with plaintiffs and other courts in this circuit in concluding that Pennsylvania's economic loss doctrine, as interpreted by Pennsylvania courts, does not bar plaintiffs' UTPCPL claim.

A predictive ruling by the Third Circuit is binding on its district courts absent "*clear* statement by the Pennsylvania Supreme Court to the contrary or other persuasive evidence of a change in Pennsylvania law." Smith v. Calgon Carbon

9

Corp., 917 F.2d 1338, 1343 (3d Cir. 1990) (alteration in original). District courts need not adhere to a predictive ruling if state courts later prove that prediction to be wrong amounting to a persuasive "intervening change[] in the law." McDonough v. State Farm Fire & Cas. Co., 365 F. Supp. 3d 552, 560-61 (E.D. Pa. 2019) (collecting cases); see also Busch v. Domb, No. 17-2012, 2017 WL 6525779, at *4 (E.D. Pa. Dec. 21, 2017) ("[W]hen we are applying state law and there is persuasive evidence that it has undergone a change, we are not bound by our previous panel decision if it reflected our reliance on state law prior to its modification." (quoting Robinson v. Jiffy Executive Limousine Co., 4 F.3d 237, 239–40 (3d Cir. 1993)); Lovelace v. Nationwide Mut. Ins. Co., No. 18-2701, 2018 WL 3818911, at *3 (E.D. Pa. Aug. 10, 2018) ("District courts are not bound by a court of appeals' prediction when intermediate state appellate courts indicate that the prediction was wrong." (citing Busch, 2017 WL 6525779, at *4)). We conclude that there is evidence of a persuasive change in Pennsylvania law.

Werwinski was based on scant "federal and state decisions interpreting Pennsylvania law" that "shed little light on the question at issue." Werwinski, 286 F.3d at 675. Its prediction also relied on Pennsylvania's "lack of hospitality to tort liability for purely economic loss." Id. (citations omitted). But Pennsylvania state court jurisprudence on the economic loss doctrine has changed significantly since that decision. Specifically, the Pennsylvania Superior Court has twice concluded that UTPCPL claims are not barred by the economic loss doctrine. See Dixon v. Nw. Mut., 146 A.3d 780, 790 (Pa. Super. Ct. 2016); Knight v. Springfield Hyundai, 81 A.3d 940, 951-52 (Pa. Super. Ct. 2013). And the Pennsylvania Supreme Court has

10

clarified that Pennsylvania courts are not in fact hostile to tort liability for purely economic loss; *per contra*, the court announced less than one year ago that "purely 'economic loss' may be recoverable under a variety of tort theories." Dittman, 196 A.3d at 1052 (citation omitted).

The binding law on Pennsylvania litigants is that of Dixon and Knight, not Werwinski. When federal courts are sitting in diversity jurisdiction and legal rules dictate the outcome, that outcome "[should] be substantially the same … as it would be if tried in a state court." Busch, 2017 WL 6525779, at *5 (quoting Chamberlain v. Giampapa, 210 F.3d 154, 158–59 (3d Cir. 2000)). We decline to apply a federal standard diametrically opposed to the state standard, which would promote the "unwelcome" practice of forum shopping. Lovelace v. Nationwide Mut. Ins. Co., No. 18-2701, 2018 WL 3818911, at *3 (E.D. Pa. Aug. 10, 2018); see also Hanreck v. Winnebago Indus., Inc., No. 16-CV-1163, 2019 WL 1383509, at *15 (M.D. Pa. Mar. 27, 2019). We will therefore permit plaintiffs' UTPCPL claims.

The Werwinski court also predicted that the Pennsylvania Supreme Court would bar intentional fraud claims under the economic loss doctrine. Werwinski, 286 F.3d at 675-80. Pennsylvania law has not changed with regard to fraudulent misrepresentation, and courts continue to foreclose fraudulent misrepresentation claims under the economic loss doctrine. See, e.g., Pansini v. Trane Co., No. 17-3948, 2018 WL 1172461, at *6 (E.D. Pa. Mar. 6, 2018); see also Dittman, 196 A.3d at 1054 (addressing negligence-based claims). Under the circumstances, we remain bound by Werwinski's holding that the economic loss doctrine bars fraudulent misrepresentation claims.

We also agree with Rite Aid that, assuming a contract exists, the alleged fraud is "intrinsic to the contract" and does not fall within the Third Circuit's fraudulent inducement exception to the economic loss doctrine. "[I]ntentional misrepresentation claims are generally preempted by the economic loss rule," except where "a defendant committed fraud to induce another to enter a contract." Whitaker v. Herr Foods, Inc., 198 F. Supp. 3d 476, 490 (E.D. Pa. 2016) (quoting Reilly Foam Corp. v. Rubbermaid Corp., 206 F. Supp. 2d 643, 658 (E.D. Pa. 2002)); see also Werwinski, 286 F.3d at 680-81. Plaintiffs have not alleged a fraud "external" to the parties' alleged contractual obligations, *i.e.*, a fraud that does not relatedly solely to "the quality or characteristics of the goods sold." Whitaker, 198 F. Supp. 3d at 490. Moreover, this is the type of claim plaintiffs' warranty allegations are designed to address. Plaintiffs' fraudulent misrepresentation claim will therefore be dismissed.[1]

**D.     Unjust Enrichment**

Unjust enrichment is "the retention of a benefit conferred by another, without offering compensation, in circumstances where compensation is reasonably

---

[1] Rite Aid also moves to dismiss plaintiffs' negligent misrepresentation claim under the economic loss doctrine. Pennsylvania's economic loss doctrine does not categorically bar negligence claims. See Dittman, 196 A.3d at 1054. The validity of a negligent misrepresentation claim instead "turns on the determination of the source of the duty plaintiff claims the defendant owed." Id. (citation omitted). If the alleged breach is "independent[] of any contract duties between the parties," plaintiffs' tort claim may survive. Id. This determination, in turn, depends on the existence of a contract and the specific terms of the alleged contract. We decided *supra* to grant plaintiffs leave to amend their breach of contract claims with a specific focus on the terms of the alleged contract. Because plaintiffs' amendment may inform our application of the economic loss doctrine as to the negligent misrepresentation claim, we will deny without prejudice Rite Aid's motion to dismiss it.

expected, and for which the beneficiary must make restitution." Commonwealth by Shapiro v. Golden Gate Nat'l Senior Care LLC, 194 A.3d 1010, 1034 (Pa. 2018) (quoting Roethlein v. Portnoff Law Assocs., Ltd., 81 A.3d 816, 825 n.8 (Pa. 2013)). In the Commonwealth of Pennsylvania, unjust enrichment claims fall into two categories. The first is a quasi-contractual theory of liability, in which case the unjust enrichment claim is pled in the alternative to a breach of contract. See Khawaja v. RE/MAX Cent., 151 A.3d 626, 633 (Pa. Super. Ct. 2016). The second is a theory based on underlying tortious conduct, in which case the unjust enrichment claim is a companion claim to the underlying tort. See Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc., 171 F.3d 912, 936 (3d Cir. 1999) (quoting RESTATEMENT OF RESTITUTION § 3 cmt. a (AM. LAW INST. 1937)). Under the second theory, the success of the unjust enrichment claim is dependent on the success of its predicate tort. See Steamfitters, 171 F.3d at 937.

Plaintiffs' unjust enrichment claim is ambiguous as to whether it sounds in contract or tort. (See Doc. 38 ¶¶ 194-202). Plaintiffs do not disavow either theory. (See Doc. 59 at 34 & n.9). Nevertheless, this ambiguity is inconsequential because plaintiffs can proceed under either theory. Because plaintiffs' underlying tort claim survives this stage of litigation, plaintiffs may proceed on a tortious theory of unjust enrichment. Plaintiffs may also advance a quasi-contractual claim because we

dismissed their claim for breach of contract.[2]  For these reasons, we will deny Rite Aid's motion to dismiss plaintiffs' unjust enrichment claim.

### E. Class Certification

Rite Aid moves to dismiss plaintiffs' proposed subclass of Pennsylvania consumers, arguing that plaintiffs cannot represent a class to which they do not belong.  (Doc. 53 at 16).  Rite Aid does not specify whether it advances this argument as an Article III standing issue or a Rule 23 adequacy issue.[3]  (See id.)  Once the named plaintiff in a class action demonstrates that they have individual standing to sue, "there remains no further separate class standing requirement in the constitutional sense."  In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 306-07 (3d Cir. 1998).  Thus, Rule 23 is the appropriate vehicle to test whether plaintiffs are members of the class they seek to represent, as well as whether they share injuries and interests with that class.  See Neale v. Volvo Cars of

---

[2] Rite Aid argues that we must dismiss plaintiffs' unjust enrichment claim "because Plaintiffs allege the existence of a contract."  (Doc. 53 at 14 n.2).  We disagree.  A party may plead a quasi-contractual theory of unjust enrichment in the alternative to a breach of contract when the parties dispute the existence or validity of a contract.  See Vantage Learning (USA), LLC v. Edgenuity, Inc., 246 F. Supp. 3d 1097, 1100 (E.D. Pa. 2017) (collecting cases); AmerisourceBergen Drug Corp. v. Allscripts Healthcare, No. 10-6087, 2011 WL 3241356, at *3 & n.4 (E.D. Pa. July 29, 2011) (same); see also FED. R. CIV. P. 8(d)(3).  Rite Aid submits that "the mere purchase of a consumer good … [does not] establish a valid and enforceable contract."  (Doc. 53 at 9).  Therefore, plaintiffs may proceed on a quasi-contractual theory of unjust enrichment.

[3] The Supreme Court has acknowledged an inconsistency in its case law regarding whether this inquiry should be analyzed as an Article III standing issue or a Rule 23 adequacy issue.  See Gratz v. Bollinger, 539 U.S. 244, 263 n.15 (2003).  In light of this inconsistency, we defer to settled Third Circuit precedent.

14

N. Am., LLC, 794 F.3d 353, 368 (3d Cir. 2015). Rite Aid does not dispute that Silva and Avenetti have individual Article III standing to bring the claims asserted in the second amended complaint. (See Docs. 53, 65). Therefore, we will exercise our discretion and defer resolution of this issue until the Rule 23 stage.

## IV. Conclusion

For the foregoing reasons, we will grant Rite Aid's motion to dismiss plaintiffs' request for injunctive relief as well as their claims for breach of contract, implied warranty, express warranty, and fraudulent misrepresentation. We will deny the motion in all other respects. An appropriate order shall issue.

      /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:    September 19, 2019